1

2

3

4               UNITED STATES DISTRICT COURT

5               NORTHERN DISTRICT OF CALIFORNIA

6                      SAN JOSE DIVISION

7

8    ENOVSYS LLC,                          Case No.   23-cv-04549-EJD

9                 Plaintiff,               **ORDER GRANTING MOTION TO**
                                           **DISMISS**
10          v.

11   UBER TECHNOLOGIES, INC.,              Re: ECF No. 29

12                Defendant.

13          Plaintiff Enovsys LLC ("Enovsys") accuses Uber Technologies, Inc. ("Uber") of

14   infringing U.S. Patent Nos. 6,441,752 ("'752 patent"); 6,756,918 ("'918 patent"); and 7,199,726

15   ("'726 patent") (collectively, the "Asserted Patents") related to location-based wireless

16   technology.  Complaint ("Compl."), ECF No. 1.  Uber moves to dismiss Enovsys's complaint

17   under Rule 12(b)(6) on the basis that (1) the Asserted Patents are invalid because they recite

18   patent-ineligible subject matter under 35 U.S.C. § 101; and (2) the complaint fails to state a claim

19   for willful and indirect infringement.[1]  Uber's Motion to Dismiss ("Mot." or "Motion"), ECF No.

20   29.

21          For the reasons set forth below, the Court GRANTS Uber's Motion, and Enovsys's

22   complaint is DISMISSED WITHOUT LEAVE TO AMEND.

23

24

25

26   ───────────────

27   [1] Enovsys confirmed during the hearing on Uber and Lyft's motion to dismiss it is "not
     maintaining the willful or indirect [infringement claims] with regard to [Uber or Lyft.]"  February
     29, 2024, Hearing Tr. at 6:8–10.

28   Case No.: 23-cv-04549-EJD
     ORDER GRANTING MOTION TO DISMISS
                                          1

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.    BACKGROUND

### A.    Overview of the Asserted Patents

The '726 patent is a continuation of the '918 patent, which is a continuation-in-part of the '752 patent.  Compl., Exs. A–C.  The Asserted Patents have similar specifications, claim priority to December 30, 2000, and expired on December 30, 2020.  The Asserted Patents are all titled "Method and Apparatus for Locating Mobile Units Tracking Another or Within a Prescribed Geographic Boundary" and are directed broadly to methods and systems for collecting and analyzing the location of mobile devices, including their proximity, within a geographic region and providing the location of nearby devices to a user.  *See id.*

The '918 patent's specification explains that the "wireless industry is currently gearing towards the provision of a wide range of location-based services to the general public" and "such services will include utilizing the location of a subscriber's portable remote unit to channel a wide range of location-based services to the subscriber."  '918 patent, 1:17–21.  Accordingly, Enovsys argues, the Asserted Patents "disclose a need to use such an improved system not only for safety reasons but to prevent network overloading and power consumption of location enabled devices."  Enovsys's Opposition to Uber's Motion to Dismiss ("Opp."), ECF No. 38 at 3.

Claim 15 of the '918 patent, which Uber contends is representative of all Asserted Claims[2], is shown below:

> **15.** A method for determining that a first portable remote unit of a wireless consumer associated with a network is being tracked by at least a Second portable remote unit that is in motion with the first portable remote unit over a tracking period comprising,
>
> > i)    obtaining the location information of the first portable mobile remote unit, said location information provided at intervals during said tracking period;

---

[2] Enovsys asserts that Uber has infringed claims 1, 3, 4, 6, 7, and 12 of the '752 patent (Compl. ¶ 57), claims 1, 4, 6, 8, 12, and 13 of the '726 patent (*id.* ¶ 119), and claims 1, 2, 15, 22, and 24 of the '918 patent (*id.* ¶ 198) (collectively, the "Asserted Claims").

ii)     obtaining the location information of the at least second portable communication unit that is within a specified geographic boundary of the first portable remote unit, said location information provided at intervals during Said tracking period;

iii)     using the location obtained according to step (i) and (ii) to verify whether the first portable remote unit and second portable remote unit have maintained relative proximity during the tracking period;

iv)     forwarding the result of the verification to a network requestor at the end of the tracking period.

Claim 1 of the '752 patent is shown below:

> **1.** A method for providing the location of a portable mobile remote unit in a geographic region of a wireless network to a wireless consumer requesting the location of portable mobile remote units that are maintaining close proximity to the wireless consumer in the geographic region comprising:
>     i) obtaining the location of the wireless consumer at intervals over a period of time;
>     ii) requesting at each interval, at the network, that all mobile remote units within close proximity of the wireless consumer disclose their location to the network;
>     iii) maintaining a list of mobile remote units that provided their location at each interval after the request of (ii);
>     iv) from the list of (iii), forwarding the location of at least a mobile remote unit to the mobile consumer upon determination that the remote unit maintained close proximity to the mobile consumer over the period of time of (i).

Claim 1 of the '726 patent is shown below:

> **1.** A communication system comprising:
>     (i)    a portable mobile remote unit;
>     (ii)   a network of communication units;
>     (iii)  the portable mobile remote unit able to communicate with at least a transmitter within the network to establish its

geographic location within the system;

(iv) means to request for the location information of portable mobile remote units that are in a geographic boundary that is prescribed within the coverage area of said network;

(v) means to provide the location information of the portable mobile remote unit to the network upon determination that the portable mobile remote unit is within said prescribed geographic boundary requested by the network; (vi) means to determine and report to the system that, another portable mobile remote unit has maintained relative proximity to the portable mobile remote over a period of time while in motion.

Enovsys generally asserts that Uber infringes the Asserted Patents because its ride services permit a customer to request a service through Uber's App from Uber drivers located in the same geographic area and allow the rider to track the location of nearby Uber drivers, including the driver accepting the service request.  Compl. ¶ 19.

## B.       Procedural Background

Enovsys filed the complaint on September 5, 2023.  On November 1, 2023, Uber filed the present motion to dismiss.  The case was related to *Enovsys LLC v. Lyft, Inc.*, Case No. 23-cv-05157 (N.D. Cal.) ("*Enovsys v. Lyft*") on December 11, 2023.  ECF No. 41.  Lyft filed a motion to dismiss in the *Enovsys v. Lyft* case on November 28, 2023.  The Court heard oral argument on both motions on February 29, 2024.

## II.    LEGAL STANDARD

## A.       Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts permitting the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," although the allegations must show "more than a sheer possibility that a

United States District Court<br>Northern District of California

1  defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

2  In evaluating a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual

3  allegations and construe them in the light most favorable to the plaintiff. *Reese v. BP Expl.*

4  *(Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). But the court need not "accept as true allegations

5  that contradict matters properly subject to judicial notice" or "allegations that are merely

6  conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

7  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

8  "[P]atent eligibility can be determined at the Rule 12(b)(6) stage." *Aatrix Software, Inc. v.*

9  *Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citations omitted); *see also,*

10  *e.g., Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1036, 1312 (Fed. Cir. 2019). To succeed on a Rule

11  12(b)(6) motion based on patent ineligibility, the movant must show that "there are no factual

12  allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*

13  *Software*, 882 F.3d at 1125.

14  **B.   Patent Eligibility**

15  "Patent eligibility is governed by 35 U.S.C. § 101, which provides that 'whoever invents or

16  discovers any new and useful process, machine, manufacture, or composition of matter, or any

17  new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and

18  requirements of this title.'" *Sanderling Mgmt. Ltd. V. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir.

19  2023) (alterations omitted) (quoting 35 U.S.C. § 101). Accordingly, "[a] § 101 analysis begins by

20  identifying whether an invention fits within one of the four statutorily provided categories of

21  patent-eligible subject matter: processes, machines, manufactures, and compositions of matter."

22  *Aatrix Software*, 882 F.3d at 1125 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14

23  (Fed. Cir. 2014)). However, the Supreme Court has recognized that these broad categories of

24  patent-eligible materials contain an implicit exception, such that "[l]aws of nature, natural

25  phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad*

26  *Genetics, Inc.*, 569 U.S. 576, 589 (2013) (internal quotation marks and citation omitted). In

27  applying this exception, courts "must distinguish between patents that claim the building blocks of

28  Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1 human ingenuity and those that integrate the building blocks into something more." *Alice Corp.*

2 *Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (internal quotations and citation omitted).

3       In *Alice*, the Supreme Court established a two-step framework to determine whether a

4 claim falls within the "abstract idea" exception. First, the court must "determine whether the

5 claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 217. This inquiry is

6 a "meaningful one" and "cannot simply ask whether the claims involve a patent-ineligible concept,

7 because essentially every routinely patent-eligible claim involving physical products and actions

8 involves a law of nature and/or natural phenomenon." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

9 1327, 1335 (Fed. Cir. 2016). "Rather, the . . . inquiry applies a stage-one filter to claims,

10 considered in light of the specification, based on whether 'their character as a whole is directed to

11 excluded subject matter.'" *Id.* (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d

12 1343, 1346 (Fed. Cir. 2015)).

13       Second, if the claims are directed to patent-ineligible subject matter, the court must

14 "consider the elements of each claim both individually and 'as an ordered combination' to

15 determine whether the additional elements 'transform the nature of the claim' into a patent-eligible

16 application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collab. Servs. v. Prometheus Lab'ys, Inc.*, 566

17 U.S. 66, 78 (2012)). For example, "a new combination of steps in a process may be patentable

18 even though all the constituents of the combination were well known and in common use before

19 the combination was made." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). The second step of the

20 *Alice* test is satisfied when the claim limitations "involve more than performance of well-

21 understood, routine, [and] conventional activities previously known to the industry." *Berkheimer*

22 *v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quoting *Content Extraction & Transmission*

23 *LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)) (cleaned up).

24 Whether the elements of a claim or the claimed combination are well-understood, routine, and

25 conventional activities "is a question of fact" that—if subject to a genuine dispute— "cannot be

26 answered adversely to the patentee based on the sources properly considered on a motion to

27 dismiss." *Aatrix Software*, 882 F.3d at 1128; *see also Berkheimer*, 881 F.3d at 1369 ("While

United States District Court
Northern District of California

1    patent eligibility is . . . a question of law, . . . [w]hether something is well-understood, routine, and

2    conventional to a skilled artisan at the time of the patent is a factual determination").

3    **III.    DISCUSSION**

4    Uber contends that the Asserted Claims fall within the patent-ineligible "abstract ideas"

5    exception to Section 101.  Specifically, Uber argues that all Asserted Claims are directed to the

6    abstract idea of (1) collecting location information, (2) analyzing it, and (3) presenting the results.

7    Mot. 9.

8    **A.    Representative Claim**

9    A court may treat a claim as representative where all claims are "substantially similar and

10   linked to the same abstract idea." *Content Extraction & Transmission LLC*, 776 F.3d at 1348.

11   Uber argues that claim 15 of the '918 patent is representative because "the remaining independent

12   claims generally have fewer, not more limitations" and "the dependent claims add nothing of

13   significance."  Mot. 4.  In its opposition brief, Enovsys states that claim 15 is "clearly not"

14   representative because of "the significant differences in methods and structures between the

15   various and disparate representative claims of the [Asserted Patents]."  Opp. 6.  At the hearing on

16   the motion, when asked whether the '918 patent should be representative, counsel responded that

17   although "the claims across the three patents [are not] identical," the parties and Court "could use

18   [it], sure."  February 29, 2024, Hearing Tr. at 34:10–23.

19   Nevertheless, the Court will evaluate whether the claims are substantially similar enough

20   to treat claim 15 of the '918 patent as representative.

21   Enovsys argues that certain claims recite additional steps "directed to the ability to

22   compute correlation between device locations in order to determine that one is tracking another,"

23   "to limit the scope of data processed," and "directed to the goal of conserving resources by

24   generating a narrower subset of devices out of the whole."  Opp. 5, 6.  For instance, Enovsys flags

25   that claim 2 of the '918 patent adds that the portable remote unit of claim 1 has "means to further

26   determine if location disclosure for the remote unit is prohibited at a specific geographic boundary

27   before sending its location to the network," claim 1 of the '752 patent requires "obtaining the

28   Case No.: 23-cv-04549-EJD
     ORDER GRANTING MOTION TO DISMISS
                                        7

United States District Court
Northern District of California

1    location of the wireless consumer at intervals over a period of time," and claim 1 of the '726

2    patent requires a "geographic boundary that is prescribed within the coverage area." *Id.*  Enovsys

3    does not elaborate beyond identifying the distinction in the claims' language and fails to

4    meaningfully argue why the other claims are significantly distinct from claim 15 of the '918

5    patent.  *See Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain

6    situations, such as if the patentee does not present any meaningful argument for the distinctive

7    significance of any claim limitations not found in the representative claim or if the parties agree to

8    treat a claim as representative").

9        More importantly, the claims identified by Enovsys are "substantially similar," and as

10    discussed below, are "linked to the same abstract idea" present in claim 15 of the '918 patent.

11    *Content Extraction*, 776 F.3d at 1348.  The additional claims Enovsys highlights all describe (a)

12    "request[ing] or receiv[ing] the geographic location of a mobile device in its network at intervals

13    for a period of time; b) receiv[ing] and fulfill[ing] requests from third-party requestors for the

14    locations of other mobile device within specified geographic areas; and c) mak[ing] proximity or

15    tracking determinations between two mobile devices in the network."  Opp. 2.  Claim 15 of the

16    '918 patent, which Uber contends is representative, describes (1) obtaining the location

17    information of the first portable mobile remote unit; (2) obtaining the location information of a

18    second portable communication unit, (3) using the location obtained according to (1) and (2) to

19    verify whether the two portable remote units have maintained proximity; and (4) forwarding the

20    result of the verification to a network requestor.  '918 patent, claim 15.  Thus, the purported

21    technological improvements Enovsys identifies are all reflected in claim 15 of the '918 patent.

22        Enovsys has not demonstrated that any feature not found in claim 15 amounts to a

23    "distinctive significance" that would differentiate any claim.  *Berkheimer*, 881 F.3d at 1365.  The

24    Court finds that the remaining claims are substantially similar to claim 15 for purposes of Uber's

25    Section 101 challenge claim.  Thus, the Court will treat claim 15 of the '918 patent as

26    representative.

27

28    Case No.: 23-cv-04549-EJD
      ORDER GRANTING MOTION TO DISMISS
                                                    8

**B.**     *Alice* **Step One: Whether the Claims Are Directed to an Abstract Idea**

As noted above, *see supra*, at Part II(B), "[a] § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter: processes, machines, manufactures, and compositions of matter." *Aatrix Software*, 882 F.3d at 1125 (citation omitted).  Applying step one of *Alice*, Uber argues that claim 15 of the '918 patent is directed to the abstract idea of (1) collecting location information, (2) analyzing it, and (3) presenting results.  Mot. 2.  This is essentially, Uber contends, "watching someone to see where they go, figuring out if anyone is in the vicinity nearby or is following them, and then reporting it." *Id.* at 9.  Uber analogizes the technology to (1) a detective tracking a witness and suspect, (2) an emergency-dispatcher tracking emergency vehicles in a specific location, and (3) the children's "Marco Polo" game.

Enovsys responds that the Asserted Claims' "own language" and the description in the common specification demonstrate that the Asserted Claims are not abstract because they are "grounded in new telecommunication architectures and devices and are directed to improving those technological architectures by employing devices that allow for and fulfill tracking and proximity determinations and to make those determinations in specific ways." Opp. 10.  Enovsys also takes issue with Uber's detective analogy, arguing it is flawed because detectives do not "have every possible suspect report their location to the detective at regular intervals to determine whether the suspect is following the client." Opp. 12.

The Supreme Court and the Federal Circuit have not established a bright-line test separating abstract ideas from concepts that are sufficiently concrete to eliminate further inquiry under the first step of the *Alice* framework.  *See, e.g., Alice*, 573 U.S. at 220.  Thus, in evaluating whether claims are directed to patent-ineligible abstract ideas, courts have generally begun by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334.  The Supreme Court has recognized that information itself is intangible.  *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 451 n.12 (2007).  As a result, the Federal Circuit has generally found claims abstract where they are directed to some

Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   combination of acquiring information, analyzing information, or displaying the results of that

2   analysis.  *See e.g.*, *AI Visualize, Inc. v. Nuance Comms., Inc.*, No. 2022-2109, at *10 (Fed. Cir.

3   Apr. 4, 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data,

4   particularly when claimed at a high level of generality, are abstract concepts"); *see also*

5   *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094–95 (Fed. Cir. 2016); *Elec. Power*

6   *Grp., LLC v. Alstom S.A*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (invalidating claims about

7   collecting, analyzing and presenting information as abstract); *see also In re Killian*, 45 F.4th 1373,

8   1380 (Fed. Cir. 2022) ("We have found similar claims pertaining to data gathering, analysis, and

9   notification on generic computers to be directed to abstract ideas").

10   "[A] telltale sign of abstraction is when the claimed functions are mental processes that can

11   be performed in the human mind or using a pencil and paper."  *Trinity Info Media, LLC v.*

12   *Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023) (cleaned up).  For example, in *Trinity Info*

13   *Media*, the Federal Circuit held that a "poll-based networking system that connects users based on

14   similarities as determined through poll answering and provides real-time results to the users" was

15   directed to the abstract idea of "matching based on questioning."  *Id.* at 1358, 1362.  The patent's

16   specifications "frame[d] the inventor's problem in terms of how to improve existing polling

17   systems ... [and] not how to improve computer technology."  *Id.* at 1363.  The asserted claims

18   there "[did] not require specialized computer components" and were not "directed to a

19   technological improvement in computer or mobile phone functionality."  *Id.* at 1364.  The court

20   concluded that "plac[ing] the abstract idea in the context of a distributed networking system ...

21   [did] not change the focus of the asserted claims from an abstract idea."  *Id.* at 1365; *Ficep Corp.*

22   *v. Peddinghouse Corp.*, 2023 WL 5346043, at *3 (Fed. Cir. Aug. 21, 2023) (patent directed to

23   abstract idea where the "focus of the claimed advance" was "automating a previously manual

24   process").  But just because a "claimed system achieves automation of a task previously

25   performed by humans ... does not mean the claimed system is necessarily directed to an abstract

26   idea."  *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 643 (Fed. Cir.

27   2020) (holding patent directed to non-abstract idea that described "an improved system for

28   Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

washing jet engines," rather than "the mere desired result of automated jet engine washing").

Against that backdrop, Uber contends the claim 15 of the '918 patent falls squarely into subject matter the Federal Circuit has deemed ineligible.  In Uber's view, the Asserted Claims amount to no more than maintaining a "list" or "inventory" of units (collecting information), determining if a unit is within a certain area (analyzing information), tracking a unit in motion (analyzing information), and providing location information to a remote unit in addition to the network (presenting results).  Mot. 5–6.  In support, Uber relies heavily on two recent Federal Circuit decisions: *Weisner v. Google ("Weisner")*, 51 F.4th 1073 (Fed. Cir. 2022) and *Int'l Bus. Machines Corp. v. Zillow Grp. ("Zillow"), Inc.*, 50 F.4th 1371 (Fed. Cir. 2022).  Mot. 9–12.  The Court will begin by comparing claim 15 of the '918 patent with "those claims already found to be directed to an abstract idea" in *Weisner* and *Zillow*, and the Court will follow by evaluating decisions Enovsys argues should govern.  *See Enfish*, 822 F.3d at 1334.

### 1.    *Weiser v. Google*

In *Weisner v. Google*, the Federal Circuit considered whether the claims of patents that were directed to collecting and reporting location history over time were patent ineligible. 51 F.4th at 1082–84.  Although *Weisner* ultimately found the representative claims of all four asserted patents to be directed to an abstract idea, it evaluated the patents in two buckets. Regarding the first bucket, *Weisner* found that the claims of those patents were directed to "collect[ing] information on a user's movements and location history [and] electronically record[ing] that data."  *Id.* at 1082.  Put simply, the claims were "directed to creating a digital travel log."  *Id.* at 1082–83.  The Federal Circuit explained that "[a]utomation or digitization of a conventional method of organizing human activity like the creation of a travel log on a computer does not bring the claims out of the realm of abstractness."  *Id.* at 1083 (rejecting argument that claims improve the "integrity" of the data where purported technological advantages "unlinked to the claim or the patent claims or specification").  At step two, the court found that the claims in the first bucket of patents "d[id] not recite significantly more than the abstract idea of digitizing a travel log using conventional components," citing generic components and features in the

Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

specification such as "software 89," "methods such as Bluetooth," "any other handheld electronic device," the "telecommunications network" (or world wide web), and a generic "GPS or other navigational system." *Id.* at 1083–1084.

Regarding the second bucket of asserted patents, the Federal Circuit determined the claims were "directed to creating and using travel histories *to improve computerized search results*." *Id.* at 1084 (emphasis added). The court distinguished the second group because those patents emphasized "using the location histories in computerized searching" as "a distinct concept" from "mere accumulation of location histories." *Id.* In contrast with the preambles of claim 1 of the first bucket of patents which "focus on creating the location histories," the preambles to claim 1 of the second bucket of patents recited a "method of enhancing digital search results for a business in a target geographic area using URLs of location histories," and a "method of combining enhanced computerized searching for a target business with use of humans as physical encounter links." *Id.* at 1084. Although "a much closer question," the court concluded that the claims in the second bucket were likewise directed to an abstract idea. *Id.* at 1085. At step two, however, the plaintiff had plausibly alleged that the claims recite "a specific implementation of the abstract idea that purports to solve a problem unique to the Internet." *Id.*

Predictably, Enovsys argues that the Asserted Patents are more like the second bucket of patents, while Uber contends the Asserted Patents are more like those in the first. Claim 15 of the '918 patent describes a "method for determining that a first portable remote unit of a wireless consumer associated with a network is being tracked by at least a second portable remote unit that is in motion with the first portable unit over a tracking period." Although seemingly close, the Asserted Claims are more like the patents in the second bucket of patents in *Weisner* for purposes of step one. The preamble to claim 15 recites "a method for determining" that one portable remote unit is being tracked by a second portable remote unit over a tracking period. Like the second bucket of patents in *Weisner*, the claim language also supports a focus on creating and *using* the locations of the portable remote units to determine their proximity to each other. As in *Weisner*, the body of claim 15 "first describe[s] accumulation" of two portable mobile remote units in a

Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS

12

"generic fashion," and then, in more detail describes the use of the location of the two mobile remote units to "verify" whether the two portable remote units have maintained relative proximity and "forward[] the result" to a network requester.  *Id.* at 1084; '918 patent, 14:8–15 (first half of claim 15 describing obtaining the location information of two portable mobile remote units); '918 patent, 14:16–22 (second half of claim 15 describing using the location information to verify proximity and forwarding result of verification).  And as in *Weisner*, the specification also supports this emphasis on using the locations "as a distinct concept from mere accumulation of location" information.  51 F.4th at 1082–84; '918 patent,1:21–24 (for location-based services "to be successful, the remote unit must be able to obtain and relay its location information to other communication targets of the network requesting such information").

But whether the claims here are more like the first or second bucket is inconsequential for step one.  Even with the additional focus on using the locations of the portable remote units rather than just accumulation of the locations, the Court follows *Weisner* and finds that, under step one, claim 15 of the '918 patent is directed to patent ineligible subject matter.  *Weisner*, 51 F.4th at 1082, 1084 (claims directed to "creating a digital travel log" and claims directed to "creating and using travel histories to improve computerized search results" both directed to an abstract idea).  Claim 15 is directed to an abstract idea of collecting location information ("obtaining the location information of the first portable mobile remote unit" and "obtaining the location information of the at least second portable communication unit"), analyzing the information ("using the location obtained" to "verify" the "relative proximity" of both units"), and displaying the results of that analysis ("forwarding the result of the verification to a network requestor").

### 2. *IBM v. Zillow*

In *Zillow*, the Federal Circuit affirmed the district court's finding that two of the asserted patents claimed ineligible subject matter under Section 101.  *Zillow*, 50 F.4th at 1374.  As to the first patent, which described a method for "coordinated geospatial, list-based and filter-based selection," the Federal Circuit found that the claims recited the abstract steps of "presenting a map, having a user select a portion of that map, and then synchronizing the map and its corresponding

Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS
13

1    list to display a more limited data set to the user." *Id.* at 1378.  The court further agreed with the

2    district court that the patent was "result-oriented, describing required functions (presenting,

3    receiving, selecting, synchronizing), without explaining how to accomplish any of the tasks." *Id.*

4    ("[i]dentifying, analyzing, and presenting certain data to a user is not an improvement specific to

5    computing").  At step two, the court explained that the claims used "functional language, at a high

6    level of generality and divorced from any computer technology." *Id.* at 1379.  Thus, they did not

7    provide inventive concepts sufficient to pass muster under step two.

8         Regarding the second asserted patent, which claimed a method of displaying objects in

9    visually distinct layers, the Federal Circuit agreed that the claims were directed to "the abstract

10   idea of organizing and displaying visual information." *Id.* (explaining that the claims "merely

11   organize and arrange sets of visual information into layers and then present said layers on a

12   generic display device").  While the claimed methods "may speed up that organizational process,

13   by using a computer," they do not "recite an improvement in any computing technology." *Id.* at

14   1380.  The court further concluded that the second patent failed step two because "[a]ny of the

15   patent's improved efficiency [came] not from an improvement in the computer but from applying

16   the claimed abstract idea to a computer display." *Id.* at 1382.

17        The Court finds that the Asserted Patents are like those invalidated in *Zillow*.  The claims

18   in both are "directed to limiting and coordinating the display of information." *Id.* at 1378.  And

19   similar to the first patent in *Zillow*, the Asserted Patents here are "result-oriented, describing

20   required functions" (obtaining location information of two mobile units, using the location

21   information, and forwarding the result), "without explaining *how* to accomplish any of the tasks."

22   *Id.* at 1378 (emphasis added).

23        Enovsys's attempt to distinguish the claims here is not persuasive.  It argues that the claims

24   are distinct because they are directed to methods and systems "to improve making proximity and

25   tracking determinations by applying various filtering to reduce the amount of data that needs to be

26   processed to make such determinations." Opp. 15.  But the Federal Circuit has "treated collecting

27   information" as "within the realm of abstract ideas" even when the information is "limited to

28   Case No.: 23-cv-04549-EJD
     ORDER GRANTING MOTION TO DISMISS
     14

United States District Court
Northern District of California

1    particular content." *Elec. Power Grp.*, 830 F.3d at 1353 (collecting information limited to

2    particular content "does not change its character as information").  And *Zillow* found that the

3    patents' purported improvement of the ability of users to identify and analyze relevant data within

4    larger data sets was not enough to transform the claims to patentable subject matter.  *Zillow*, 50

5    F.4th at 1277–78.  The Asserted Claims' use of "various filtering" techniques similarly is not

6    enough.

7                    **3.      *DDR Holdings*, *BASCOM*, and *Amdocs***

8            Enovsys argues that the Asserted Patents are more like those in *DDR Holdings*, *BASCOM*,

9    and *Amdocs* because, as in those cases, the Asserted Patents "do not broadly and generically

10   claim" location tracking but rather "specify how interactions with the [wireless networks] are

11   manipulated to yield a desired result."  Opp. 21 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*,

12   773 F.3d 1245 (Fed. Cir. 2014)).  But all three of those cases involved claims that addressed

13   "problems unique to technology."  *See DDR Holdings*, 773 F.3d at 1245 (asserted patent

14   addressed "a challenge particular to the Internet" and claimed a "solution [] necessarily rooted in

15   computer technology" that overcame "a problem specifically arising in the realm of computer

16   networks"); *see also BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341

17   (Fed. Cir. 2016) (claims recited an implementation of an Internet content filtering system);

18   *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016) ("purposeful[]

19   arrange[ment] of components in a distributed architecture to achieve a technological solution"

20   involved a specific implementation as an improvement *for the Internet*).

21           The Court agrees that the claims here are more aligned with those in *Weisner* and *Zillow*.

22   Although *BASCOM*  involved a patent that claimed the installation of "a filtering tool," the

23   Federal Circuit reasoned that "the[] specific limitations do not readily lend themselves to a step-

24   one finding that they are directed to a nonabstract idea" where the claims were directed to

25   something narrower: (1) the more specific problem of providing Internet-content filtering in a

26   manner that can be customized for the person attempting to access such content while avoiding the

27   need for (potentially millions of) local servers or computers to perform such filtering and while

United States District Court
Northern District of California

1  being less susceptible to circumvention by the user; and (2) "the even more particular problem of

2  structuring a filtering scheme not just to be effective, but also to make user-level customization

3  remain administrable as users are added instead of becoming intractably complex." *BASCOM*,

4  827 F.3d at 1348.

5       And *DDR Holdings* found that the claims "[stood] apart" from other cases involving a

6  computer and the internet because "the claimed solution [was] necessarily rooted in computer

7  technology in order to overcome a problem specifically arising in the realm of computer

8  networks." *DDR Holdings*, 773 F.3d at 1257.  *Amdocs* highlighted this distinction in noting that

9  ineligible claims "may be contrasted with eligible claims" in *DDR Holdings* because the claims in

10  *DDR Holdings* "focused on a challenge particular to the Internet." *Amdocs*, 841 F.3d at 1297

11  (finding patent eligible under step two where claims "entail[ed] an unconventional technological

12  solution (enhancing data in a distributed fashion) to a technological problem (massive record

13  flows which previously required massive databases)").

14                                    * * *

15       The Court finds the claims here more analogous to those found abstract under step one in

16  *Weisner* and *Zillow*.  First, the claims do not purport to solve a problem unique to the internet or

17  computer functionality, as in *DDR Holdings*, *BASCOM*, and *Amdocs*.  Next, as described by

18  Envosys, the claims involve "request[ing] a geographic location of a mobile device" (collecting

19  information), "receiv[ing]" requests (analyzing information); "mak[ing] proximity and tracking

20  determinations" (analyzing information); and "fulfill[ing] requests" (sending information) from a

21  mobile device "for the locations of other mobile device in specified geographic areas." *See* Opp.

22  2.

23            **4.     Whether the Asserted Patents Claim an Improvement in Functionality**

24       Enovsys argues that the Asserted Patents "employ[] several improvements to conventional

25  communication network architecture to solve problems specific to wireless network."  Opp. 1.

26  The specific technological improvements Enovsys identifies all focus on some variation of using

27  "geographic boundaries and exclusion regions" to "improve network efficiency" or conserving

28  Case No.: 23-cv-04549-EJD
   ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    resources "by focusing on a certain region."  Opp. 4, 11.

2         In the context of software-based inventions, *Alice/Mayo* step one "often turns on whether

3    the claims focus on the specific asserted improvement in computer capabilities or, instead, on a

4    process that qualifies as an abstract idea for which computers are invoked merely as a tool."

5    *Trinity Info Media, LLC* v, 72 F.4th at 1362–63.

6         Enovsys's argument that the claims are not abstract because they are directed to improving

7    efficiency and conserving resources is unavailing.  Opp. 4, 10–11.  This argument relies on the

8    patent's discussion of "using geographic boundaries and exclusion regions" to "improve network

9    efficiency" and "ameliorate overloading and conserve storage space."  *Id.* at 4.  But as explained

10   above, this amounts to merely manipulating, or filtering, information that the Federal Circuit has

11   found "by itself does not transform the otherwise-abstract processes of information collection and

12   analysis."  *Elec. Power Grp.*, 830 F.3d at 1355.  And efficiently managing location information

13   within a specified geographic zone is not a technological solution because it can be performed by

14   humans.  Emergency dispatchers, for example, who receive an emergency call from one location

15   can request the locations of emergency vehicles within that same neighborhood, maintain a list of

16   those vehicles in the neighborhood, and track the distance between the emergency vehicle and the

17   caller.  Air traffic controllers similarly obtain the location of one aircraft, obtain the location of a

18   second aircraft within a specified geographic boundary, and use both locations to verify the

19   relative distance between the two to prevent collisions and facilitate the safe operation of the

20   airspace.  Even children playing Marco Polo efficiently manage location information within a

21   specified geographic zone.  *See* Mot. 18 ("In a game of Marco Polo, a child may call out to other

22   children within a specific boundary of a swimming pool at intervals ('Marco') and receive

23   responses from each child ('Polo') to help him understand the location of each child in the

24   swimming pool and to let him know if another child is nearby (i.e., in 'proximity')").  In all three

25   examples, geographic boundaries can be implemented to improve efficiency.

26        Claim 15 of the '918 patent—like the claims directed to creating and using travel histories

27   in *Weisner* and claims describing a method for coordinated geospatial, list-based and filter-based

selection and displaying data on a map in *Zillow*—is directed to an abstract idea under step one of *Alice*.  And the Asserted Patents' "improvements" of increasing efficiency and conserving resources are similarly directed to abstract ideas.  The Court proceeds to step two of *Alice*.

**C.** *Alice* **Step Two: Whether the Claims Recite an Inventive Concept**

Because the Court finds that claim 15 of the '918 patent is directed to patent-ineligible subject matter, i.e., an abstract idea, the Court must engage in what the Supreme Court has described as a search for an "inventive concept": an element or combination of elements that "in practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Mayo*, 566 U.S. at 72–73 (citation omitted).  Under step two, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217.  To be an "inventive concept," the patent must "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry."  *Berkheimer*, 881 F.3d at 1367 (quotations omitted).  Simply reciting "concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea."  *In re TLI Comms. LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

Uber argues that claim 15 of the '918 patent fails step two because it "recites only generic or black box computer components" and "fails to disclose how" the claims are performed.  Mot. 19.  Enovsys responds that each of the Asserted Claims "recites elements and limitations that were not routine or conventional at the time of the invention."  Opp. 18.  For example, Enovsys argues that "[t]elecommunication networks that allow for a third-party request for the location of a mobile device, in communication with the network to position its physical location, were not routine in 2000."  *Id.*  But this is undermined by the specification, which describes how "[i]n relevant prior art … the location of a remote unit is employed to execute location specific instructions transmitted to the remote unit."  '918 patent, 1:17–19; *see also id.* at 1:44–47 ("In Chapman, ….a global status and positioning reporting system is described.  A remote unit obtains its global location and updates the network with status information and location information as

Case No.: 23-cv-04549-EJD
ORDER GRANTING MOTION TO DISMISS
18

required"); *see also AI Visualize*, No. 22-2109, at *14 (observing that "the intrinsic record undermines [patentee's] argument" on step two where the specification "show[ed] that [the relevant technology was] known in the art").

Enovsys also contends that the "limitations providing for improved techniques for making safety, proximity or tracking determinations"—transform the Asserted Claims into a patent-eligible application of the concept of providing proximity determinations.  Opp. 20–21.  Enovsys again identifies a list of claimed features that amount to filtering or manipulating the data it argues improves efficiency and conserves resources.  *See* Opp. 18.  But unlike the "specific method of filtering Internet content" in *BASCOM* the Federal Circuit found was not, as a matter of law, conventional or generic, Enovsys has not demonstrated that the method of filtering the data here (*e.g.*, having multiple devices disclose their locations only when within a prescribed geographic boundary, obtaining the location of two mobile units and determining their proximity, and having a mobile device respond to a notification within a telecommunication network only if it exists within a geographic boundary) was not well-understood, routine, and conventional.  *BASCOM* found that the claims passed step two because the inventive concept "harnesse[d]" a specific technical feature of network technology.  *BASCOM*, 827 F.3d at 1350.  Importantly, the claims did not "merely recite the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components."  *Id.*  "[S]uch claims," the Federal Circuit explained, "would not contain an inventive concept."  The claims here recite only the abstract idea of receiving location information, reporting location information, and filtering reported locations along with the addition of generic computer components such as "network," "wireless consumer," "transmitter," and "memory means."  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea").  Merely adding use of "a network," or a "transmitter" or other technology to a conventional method of human activity "does not constitute a patentable improvement in computer technology."  *Credit Acceptance Corp.*

1    *v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

2        Enovsys argues that the Court should follow *DDR Holdings* and find that the claims satisfy

3 step two because "[l]ike the claims" in that case, the Asserted Claims "do not broadly and

4 generically claim location tracking or even merely making proximity or tracking determinations

5 but rather specify how interactions with the [wireless networks] are manipulated to yield a desired

6 result." Opp. 22 (citations omitted). The Court is unpersuaded that the claims are like those in

7 *DDR Holdings* as stated above. The claimed system in that case "generate[d] and direct[d] the

8 visitor to [a] hybrid web page that presents product information from the third-party and visual

9 look and feel elements from the host website." *DDR Holdings*, 773 F.3d at 1258–59. The claimed

10 solution was "necessarily rooted in computer technology in order to overcome a problem

11 specifically arising in the realm of computer networks." *Id.* at 1257. The claimed solution here

12 "for telecommunication systems" (Opp. 2, 4) to the problem of "certain technical and safety []

13 pitfalls in networks of deployed location enabled devices" is to use "processing techniques" or

14 "geographic boundaries." Opp. 4. These processing techniques and geographic boundaries rely

15 on generic components such as "networks," and "transmitters" and otherwise do not provide a

16 technical improvement over the prior art.

17        The Court also finds unpersuasive Enovsys's argument that the claims here should pass

18 step two like those the Federal Circuit found not ineligible—the second bucket of patents—in

19 *Weisner*. As explained above, the Court agrees that the claims are more like the second bucket of

20 patents for purposes of step one. However, *Weiser* reasoned that the second bucket of patents

21 supplied an inventive concept because the plaintiff had plausibly alleged that the claims recite "a

22 specific implementation of the abstract idea that purports to solve a problem unique to the

23 Internet." *Weisner*, 51 F.4th at 1085. The claims' "specificity as to the mechanism through which

24 they achieve[d] improved search results"—a "new technique"—was sufficient to capture an

25 inventive concept. *Id.* at 1085. The claims there "add[ed] significantly more" to the abstract idea

26 by implementing "a specific solution to a problem rooted in computer technology." *Id.* at 1088.

27 The same cannot be said here. The Asserted Patents recite limitations that amount to collecting,

1    analyzing, and presenting location information with generic components such as "portable mobile

2    remote unit," "communication unit," "network," and "transmitter."  Plaintiff does not allege any

3    "new technique," "specific implementation" of, or "specific solution" to this abstract idea.

4        The Court concludes that the Asserted Patents fail to recite an inventive concept "sufficient

5    to ensure that the claim amounts to significantly more than the abstract idea itself."  *Content*

6    *Extraction*, 776 F.3d at 1347 (quotations omitted). [3]

7    **IV.    CONCLUSION**

8        For the reasons stated, the Court finds that the Asserted Patents are directed to patent-

9    ineligible subject matter under 35 U.S.C. § 101.  The Court reviewed the Asserted Patents when

10   deciding this motion, and an amendment would not change the Court's *Alice* analysis.  *See*

11   *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (affirming dismissal under

12   § 101 and agreeing that under circumstances of that case, "amendment of the complaint would

13   have been futile"); *see also Wireless Discovery LLC v. eHarmony, Inc.*, 654 F. Supp. 3d 360, 376

14   (D. Del. 2023) ("The claims of the patents say what they say, [and] [a]mending the complaint

15   would not change the Court's § 101 analysis.").

---

22   [3] Enovsys separately argues that Uber's motion is "ill-timed" because of the presence of means-
     plus-function elements that must be construed.  Opp. 24.  The Court finds that it "has a full

23   understanding of the basic character of the claimed subject matter," and therefore, the "question of
     patent eligibility may properly be resolved on the pleadings."  *Content Extraction & Transmission*

24   *LLC*, 776 F.3d at 1349.  As to any potential claim construction issues, Enovsys has failed to
     propose any constructions or explain why they would be relevant to the Court's patent eligibility

25   analysis.  Absent any such proposal, the Court declines to speculate and concludes that under a
     plain and ordinary reading of the claims, the Asserted Claims are directed to a patent-ineligible

26   abstract idea and contain no inventive concept.  *See Trinity Info Media*, 72 F.4th at 1360–61 (to
     avoid a dismissal under § 101, a "patentee must propose a specific claim construction or identify

27   specific facts that need development and explain why those circumstances must be resolved before
     the scope of the claims can be understood for § 101 purposes.").

28   Case No.: 23-cv-04549-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    Thus, the Court GRANTS Uber's motion to dismiss, and Enovsys's complaint is

2    DISMISSED WITHOUT LEAVE TO AMEND.

3

4    **IT IS SO ORDERED.**

5

6    Dated: June 17, 2024

7

8

_____

9    EDWARD J. DAVILA
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 23-cv-04549-EJD
     ORDER GRANTING MOTION TO DISMISS
     22

United States District Court
Northern District of California